**[Cite as *Lemmo v. House of Larose Cleveland, Inc.*, 2003-Ohio-4346.]**

COURT OF APPEALS OF OHIO, EIGHTH DISTRICT

COUNTY OF CUYAHOGA

NO. 82182

DOMINIC LEMMO                           :
                                        :
    Plaintiff-Appellant                 :
                                        :       JOURNAL ENTRY
                                        :
    vs.                                 :            and
                                        :
                                        :         OPINION
HOUSE OF LAROSE CLEVELAND,              :
INC., ET AL.                            :
                                        :
    Defendants-Appellees:

DATE OF ANNOUNCEMENT
OF DECISION:                    August 14, 2003

CHARACTER OF PROCEEDING:        Civil appeal from
                                Common Pleas Court
                                Case No. CV-462329

JUDGMENT:                       REVERSED AND REMANDED.

DATE OF JOURNALIZATION:         _____

APPEARANCES:

For Plaintiff-Appellant:        RICHARD L. STOPER, JR.
                                SUSAN L. GRAGEL
                                ROBERT J. ROTATORI
                                Rotatori, Bender, Gragel,
                                  Stoper & Alexander Co., LPA
                                800 Leader Building
                                526 Superior Avenue
                                Cleveland, Ohio 44114

–2–

-CONTINUED-

| | |
|---|---|
| For Defendants-Appellees: | ROBERT P. DUVIN<br>DAVID A. POSNER<br>ROBERT M. WOLF<br>Duvin, Cahn & Hutton<br>Erieview Tower, 20th Floor<br>1301 East Ninth Street<br>Cleveland, Ohio 44114-1886 |

ANTHONY O. CALABRESE, JR., J.:

{¶1} Plaintiff-appellant, Dominic Lemmo ("Lemmo"), appeals from the trial court's granting of the defendants-appellees'[1] ("House of LaRose") motion for summary judgment. Having reviewed the arguments of the parties, the pertinent law, and for the reasons that follow, we reverse and remand the case for further review.

I.

{¶2} This case involves a claim of employment discrimination, promissory estoppel and wrongful discharge by Lemmo against the House of LaRose. The House of LaRose is a privately held corporation owned by various family members where Lemmo was employed from approximately 1978 until March of 2000. Lemmo was the general manager of Drenik Beverage Distribution who helped arrange the sale of Drenik to House of LaRose. After the sale and acquisition, Lemmo was employed with House of LaRose as general manager and, over the next 22 years, he progressed in the company and ultimately rose to senior vice-president.

{¶3} In late 1999, there was a change in upper management and a younger group was

---

[1] House of LaRose, Cleveland, Inc., House of LaRose, Akron, Inc., and Jim LaRose.

–3–

promoted. Thomas LaRose became chairman emeritus, Tim LaRose was promoted to chairman, and Jim LaRose became president. In late 1999 and early 2000, Lemmo had a couple of meetings with senior management regarding his future with the company. Lemmo states that, on October 14, 1999, he met with Tom and Tim LaRose, and the LaRoses, who told him they wanted him to stay with the company, offered him a seat on the board of directors, and stated, "As long as you want to work until retirement and you do your job, you have a job here."[2] Lemmo states that, in other meetings, similar assurances were made to him regarding future employment. House of LaRose disagrees with Lemmo's version of the meetings and conversations regarding his employment with them.

{¶4}    Lemmo originally commenced this action on July 20, 2000. The case was previously assigned case number 413475 in common pleas court and was voluntarily dismissed by Lemmo on October 18, 2001. On February 8, 2002, Lemmo refiled the complaint alleging promissory estoppel, wrongful discharge and age discrimination. On April 15, 2002, House of LaRose moved for summary judgment; following an extension of time for discovery, Lemmo filed his brief in opposition, but the motion for summary judgment was granted. Lemmo asserts five assignments of error.

II.

{¶5}    The first four assignments of error all relate to the summary judgment and will therefore be addressed together in the following section. Regarding the first four assignments of error, we find significant factual disputes on all four claims presented.

{¶6}    Lemmo's first assignment of error states that, "Because of the existence of significant factual disputes, the lower court erred in granting summary judgment by making the factual finding that Mr. Lemmo had quit his job and therefore could not demonstrate a case of employment

---

[2] See p. 9 of appellant's brief.

–4–

discrimination." Lemmo's second assignment of error states, "The lower court erred in granting summary judgment on the ground that plaintiff failed to demonstrate a prima facie case of discrimination where the record contained substantial direct and circumstantial evidence establishing age discrimination."

{¶7} Lemmo's third assignment of error states, "The lower court erred in granting summary judgment on plaintiff's claim of promissory estoppel where genuine issues of material fact existed and where plaintiff demonstrated all of the essential elements of the claim. Lemmo's fourth assignment of error states, "The lower court, biased in favor of defendants and their counsel, erred in denying plaintiff the opportunity to complete discovery prior to ruling on the summary judgment motion."

{¶8} Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. *It must be awarded with caution, resolving doubts and construing evidence against the moving party,* and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. A successful motion for summary judgment rests on the two-part foundation that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1. Emphasis added.

{¶9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356. The party against whom a motion for summary judgment is made is entitled to have such documents construed most strongly in his favor. R.C. 2311.041(B), *Morris v. First National Bank and Trust Co.* (1970), 21 Ohio St.2d

–5–

25.

{¶10}  This court reviews the lower court's granting of summary judgment *de novo*. *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704. An appellate court reviewing the granting of summary judgment must follow the standards set forth in Civ.R. 56(C).  "The reviewing court evaluates the record *** in a light most favorable to the nonmoving party ***. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741. It is with the above standards in mind that we now conduct our de novo review of Lemmo's first four assignments of error.

{¶11}  Courts generally apply an objective test in determining when an employee was constructively discharged; namely, whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. *Clowes v. Allegheny Valley Hospital* (C.A.3, 1993), 991 F.2d 1159, 1161; *McCann v. Litton Systems, Inc.* (C.A.5, 1993), 986 F.2d 946, 951; *Stephens v. C.I.T. Group/Equipment Financing, Inc.* (C.A.5, 1992), 955 F.2d 1023, 1027; *Spulak v. K Mart Corp.* (C.A.10, 1990), 894 F.2d 1150, 1154.

{¶12}  When applying this test, the courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent. The courts recognize that there is no logical reason to compel an employee to struggle with the inevitable simply to attain the "discharge" label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of co-employees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group.  A sophisticated discriminating employer should not be permitted to

–6–

circumvent the statute by transferring an older employee to a sham position as a prelude to discharge. *Stephens v. C.I.T. Group/Equipment Financing, Inc.* (C.A.5, 1992), 955 F.2d 1023; *Guthrie v. J.C. Penney Co., Inc.* (C.A.5, 1986), 803 F.2d 202.

{¶13}  There are material differences regarding several factors indicating that Lemmo may not have quit his job. For example, each party's version of the facts leading up to the letter that Lemmo submitted to James LaRose on February 22, 2000 are very different. Lemmo stated that his duties were reduced as a calculated attempt to make him feel useless in the new management structure. Furthermore, Lemmo stated that when he told management that he now had nothing to do, Tim LaRose told him "you don't have to stick here."[3] House of LaRose views this very differently stating that they wanted Lemmo to stay and be involved in the management team and further stated that they were shocked at Lemmo's letter.[4]

{¶14}  Another example of a material fact in dispute involves the discussions regarding Lemmo's future in the new management structure. The House of LaRose stated that they disagree with Lemmo's version regarding the January 2000 meeting. House of LaRose stated that Lemmo's claims that they reached an agreement concerning a five-year consulting relationship are inaccurate.[5] There are genuine issues of material fact concerning appellant's first assignment of error.

{¶15}  Regarding Lemmo's second claim, discriminatory intent in age discrimination may be established indirectly by the four-part analysis set forth in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d

---

[3] See appellant's brief p. 12, Lemmo deposition p. 161.

[4] Appellant's brief p. 10, "When James LaRose read the February 22, 2000 letter, he was shocked ***."

[5] Appellees' brief p. 9, "Tim LaRose, on the other hand, recalls this discussion with appellant quite differently ***."

–7–

146, adopted from the standards established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792. The *Barker* analysis requires that the plaintiff-employee demonstrate "(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." Id., paragraph one of syllabus.

{¶16} Discriminatory intent may also be established by direct evidence of age discrimination, which is evidence other than the four-part demonstration of *Barker*. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501. A plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer, more likely than not, was motivated by discriminatory intent. *Mauzy v. Kelly Services Inc.* (1996), 75 Ohio St.3d 578, paragraph one of the syllabus.

{¶17} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704. In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and *without deference to the trial court's determination. Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6. Emphasis added.

{¶18} The record and evidence in the case sub judice establishes the existence of genuine issues of material fact as to Lemmo's age discrimination claim. In addition to the material facts previously mentioned, there is a dispute regarding discriminatory statements made between the parties. The dispute involves Lemmo's age and the fact that Jim LaRose desired a new and younger management team. Therefore, according to Lemmo, LaRose said there was no place in the organization for him.[6] The House of LaRose disputes Lemmo's version of the comments above. In

---

[6]Tr. p. 163, Dominic Lemmo deposition. Chairman Tim LaRose

–8–

addition, there is dispute as to the reasons Lemmo was excluded from executive committee meetings once John LaRose became president and disputes as to comments surrounding Lemmo's "vacation" and employment separation.[7] There are substantial disputes regarding genuine issues of material fact regarding Lemmo's age discrimination assignment of error.

{¶19}  Lemmo's third assignment of error involves a claim of promissory estoppel. "The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, paragraph three of the syllabus.

{¶20}  The elements necessary to trigger promissory estoppel are: (1) a clear, unambiguous promise; (2) reasonable and foreseeable reliance upon the promise by the person to whom the promise is made; and (3) resulting injury to the party who relied on the promise. Id.

{¶21}  Tom LaRose stated that he informed Lemmo that his word was better than a written contract and "as long as you perform you will have employment."[8]  Lemmo states that Tom LaRose

---

told Lemmo that Jim LaRose was building a new "young" management team.  Tim said, "you're the old team, you're considered like my dad, and Jim's building a new, young management team and we got to decide what to do with you."  Lemmo deposition at p. 116.

   Tr. p. 62, Tom LaRose deposition.  Question by counsel to Tom LaRose: "Q. Suppose Dominic Lemmo testified that he was excluded from executive committee meetings once John became president.  A. I don't believe that."

   [8]Tr. p. 73-74, Thomas LaRose deposition.

–9–

told him that "as long as you want to work until retirement and do your job, you have a job here."[9] Tom LaRose stated in his testimony that he didn't say that.[10] There is a different account of events constituting genuine issue of material fact, making a directed verdict on these counts inappropriate.

{¶22} The previously mentioned disputes in the record and testimony apply to the summary judgment as it relates to discovery as well. There are genuine issues of material fact as they relate to discovery. For example, Lemmo claims that he had substantial outstanding discovery remaining and that he only voluntarily dismissed the initial case because of representations by House of LaRose that meaningful negotiations for settlement would then occur. The House of LaRose disagrees with Lemmo's position regarding this discovery claim.

{¶23} Viewing the facts and the evidence most strongly in Lemmo's favor results in reasonable minds reaching more than one conclusion. Furthermore, the record demonstrates that there are a substantial number of genuine issues of material fact in dispute in the case at hand. We find significant factual disputes in all of appellant's first four assignments of error. Accordingly, since genuine issues of material fact exist, we find the lower court erred in granting summary judgment. Lemmo's first four assignments of error are well taken.

III.

{¶24} Appellant's fifth assignment of error states, "The lower court, biased in favor of defendants and their counsel, erred in denying plaintiff's motion to disqualify defense counsel."

{¶25} The Supreme Court has held that the denial of a motion for disqualification is not a final order. *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 448-449. However, changes in

---

[9] Tr. p. 30, Dominic Lemmo deposition.

[10] Tr. p. 73, Thomas LaRose deposition.

–10–

precedent and statutory law occurred later which require further analysis above and beyond citing to *Bernbaum* as the case on point.

{¶26} The balancing test used in *Bernbaum* was abandoned with *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, which overruled *Amato v. General Motors Corp.* (1981), 67 Ohio St.2d 253. Later, the court clarified *Polikoff* by reinforcing that it is not the order which defines a special proceeding, but it is the underlying action. *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 120-122. In *Walters*, the court invited the General Assembly to amend R.C. 2505.02 if it desired to make decisions on motions, such as for the discovery of privileged information, final orders. Id. at 123.

{¶27} The General Assembly amended R.C. 2505.02. This amended version of R.C. 2505.02, which applies to all cases pending as of July 22, 1998, reads in pertinent part:

> **"(A) As used in this section:**
>
> **"'Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.**
>
> **"'Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.**
>
> **"'Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence.**
>
> **"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:**
>
> **"An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;**
>
> **"An order that affects a substantial right made in a special proceeding or upon summary application in an action after judgment;**

–11–

> **"An order that vacates or sets aside a judgment or grants a new trial;**
>
> **"An order that grants or denies a provisional remedy and to which both of the following apply:**
>
> **"The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.**
>
> **"The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.**
>
> **"An order that determines that an action may or may not be maintained as a class action."**

{¶28}  We shall now apply the amended statute to the present case. R.C. 2505.02(B)(1), (3) and (5) are inapplicable because the denial of a motion for disqualification is clearly not an order that determines the entire action, vacates judgment, sets aside judgment, grants a new trial, or determines class action status.  R.C. 2505.02(A)(2) does not apply because the order denying disqualification was not made after judgment and the order was not made in a special proceeding.  Therefore, the next step in our analysis involves examining whether the requirements of R.C. 2505.02(B)(4)(a) are satisfied.

{¶29}  If appellant will not be denied a meaningful or effective remedy by waiting to appeal the pretrial order granting disqualification, then the order may not be appealed now.  *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 448.

{¶30}  In the case at bar, appellant will not suffer irreparable harm by a delayed appeal.  Any allegation of damage to appellant's defense can be rectified. For example, if appellant establishes that he was prejudiced by the court's refusal to disqualify appellees' counsel, then appellant may receive a

–12–

new trial. As a result, a decision in favor of appellant on an appeal after final judgment will not be a hollow victory.

**{¶31}** Therefore, an immediate appeal is not required to afford appellant a meaningful or effective review. Therefore, the denial of the motion to disqualify opposing counsel is not a final appealable order.

IV.

**{¶32}** In closing, there are several inconsistencies with several material facts regarding Lemmo's departure. The record in the trial court demonstrates substantial evidence showing that Lemmo met with success over a substantial number of years in his position at House of LaRose. However, management claims that Lemmo abruptly stopped working, ended negotiations, and then quit. Furthermore, House of LaRose installed a younger senior management team and publicly reduced Lemmo's job responsibilities and staff and transferred many of his duties. Each party's version of the events is markedly different. After engaging in our de novo review, this court finds that reasonable minds could draw more than one conclusion regarding Lemmo's departure from the House of LaRose.

**{¶33}** Therefore, granting Lemmo's first four assignments of error and applying the law as set forth above to the facts of this case, we conclude that summary judgment was improperly granted in favor of House of LaRose. This court finds that the evidence demonstrated the existence of genuine issues of material fact regarding Lemmo's employment.

**{¶34}** Accordingly, the decision of the court of appeals is to grant Lemmo's first four assignments of error. Moreover, this court finds that appellant's fifth assignment of error is not a final appealable order and therefore declines further review of the final assignment of error. This court

–13–

hereby reverses and remands this case for further proceedings.

This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellees costs herein.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

                                          ANTHONY O. CALABRESE, JR.
                                          JUDGE

<u>ANNE L. KILBANE, P.J.,</u> and

<u>ANN DYKE, J.,</u>      CONCUR

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with

–14–

supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).